IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| NATIONWIDE PROPERTY AND CASUALTY INSURANCE COMPANY, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CIVIL ACTION 16-0017-WS-B ) |
| WILLIAM DUBOSE, Individually, and as Parent and Next Friend of KIMBERLY DUBOSE, | ) ) ) ) |
| Defendants. | ) ) |

## ORDER

This matter, which was recently transferred to the undersigned's docket, comes before the Court on defendants' filing styled "Rule 12(b) Motion to Dismiss" (doc. 8). The Motion has been briefed and is now ripe for disposition.

**I.   Background.**

Plaintiff, Nationwide Property and Casualty Insurance Company, brought this action for declaratory judgment against William Dubose, both individually and in his capacity as parent and next friend of Kimberly Dubose. Well-pleaded factual allegations of the Complaint reflect that, during the relevant timeframe, Nationwide issued an automobile insurance policy (the "Policy") to William Dubose, providing coverage for him and certain members of his family, including his then-18-year old daughter, Kimberly Dubose, as insured drivers on each of three family-owned vehicles, including a 2007 Nissan Altima. (Doc. 1, ¶¶ 3, 11-13.) The Complaint reflects that the Policy afforded certain coverages to Kimberly Dubose and other covered family members, but not uninsured/underinsured motorist coverage, which Nationwide says William Dubose had expressly rejected in a signed application dated February 22, 2013. (*Id.*, ¶¶ 11-13.)

The Complaint further alleges that Kimberly Dubose sustained personal injuries in a single-vehicle accident on August 30, 2014, as a passenger in the covered 2007 Nissan Altima. (*Id.*, ¶¶ 7-8.) According to the Complaint, Kimberly Dubose's friend, nonparty Toni Raine

Delacey, was behind the wheel of the Altima when the accident occurred at 1:15 a.m. on County Road 55 in Loxley, Alabama.  (*Id.*)  Kimberly Dubose is alleged to have suffered injuries to her jaw, teeth and back, requiring her hospitalization for "a number of days" after the wreck.  (*Id.*, ¶ 10.)  William Dubose and/or Kimberly Dubose presented a claim to Nationwide for uninsured/underinsured motorist benefits under the Policy for these injuries.  (*Id.*, ¶ 14.)  For its part, Nationwide took the position that no such benefits are available under the Policy for various reasons, including (among others) William Dubose's purported rejection of such coverage in the Policy application.  (*Id.*, ¶¶ 19-21.)  Notwithstanding its denial of coverage, Nationwide acknowledges that "Mr. Dubose and Ms. Dubose dispute Nationwide's position relative to the claim at issue and assert that the claim has a value of at least $75,000."  (*Id.*, ¶ 22.)

Based on these factual allegations, Nationwide filed suit against the Duboses in this District Court pursuant to 28 U.S.C. § 2201, seeking a judicial declaration "that no coverage applies or that coverage is otherwise precluded by the Policy for the claim at issue."  (Doc. 1, at 9.)  Subject matter jurisdiction is predicated on the diversity provisions of 28 U.S.C. § 1332, and is rooted in Nationwide's assertion that "the citizenship of Nationwide and the defendants is diverse and the amount in controversy exceeds $75,000.00."  (*Id.*, ¶ 4.)[1]  Defendants now move for dismissal of the Complaint without prejudice for want of subject matter jurisdiction pursuant to Rule 12(b)(1), Fed.R.Civ.P., on the ground that § 1332's amount-in-controversy requirement is not satisfied.

---

[1]    Nationwide also maintains in its pleading that "[j]urisdiction over this matter lies pursuant to 28 U.S.C. § 2201," the federal Declaratory Judgment Act.  (Doc. 1, ¶ 5.)  This statement is incorrect as a matter of law.  It is well settled that § 2201 does not confer jurisdiction upon federal courts; rather, an action brought under § 2201 must include an independent jurisdictional foothold in order to be viable.  *See, e.g., Medtronic, Inc. v. Mirowski Family Ventures, LLC*, --- U.S. ----, 134 S.Ct. 843, 848, 187 L.Ed.2d 703 (2014) ("We agree with *amicus* that the Declaratory Judgment Act does not 'extend' the 'jurisdiction' of the federal courts."); *Stuart Weitzman, LLC v. Microcomputer Resources, Inc.*, 542 F.3d 859, 861-62 (11th Cir. 2008) ("Of course, it is well established that the Declaratory Judgment Act does not, of itself, confer jurisdiction upon federal courts."); *Federal Election Com'n v. Reform Party of U.S.*, 479 F.3d 1302, 1307 n.5 (11th Cir. 2007) ("a suit brought under the [Declaratory Judgment] Act must state some independent source of jurisdiction").

**II.    Analysis.**

   ***A.    Legal Standard.***

Under 28 U.S.C. § 1332(a), federal courts have original jurisdiction over all civil actions between citizens of different states where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. *See Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1085 (11th Cir. 2010) ("For federal diversity jurisdiction to attach, all parties must be completely diverse … and the amount in controversy must exceed $75,000.") (citations omitted). "In light of the federalism and separation of powers concerns implicated by diversity jurisdiction, federal courts are obligated to strictly construe the statutory grant of diversity jurisdiction … [and] to scrupulously confine their own jurisdiction to the precise limits which the statute has defined." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1268 (11th Cir. 2000) (citations omitted); *see also Osting-Schwinn*, 613 F.3d at 1086 (similar).

As noted, the focal point of defendants' jurisdictional challenge is the amount-in-controversy prong of the diversity statute. To be sure, Nationwide includes in its Complaint a blanket assertion that "the amount in controversy exceeds $75,000.00" (doc. 1, ¶ 4); however, that representation is buttressed only by an allegation that the Duboses "assert that the claim has a value of at least $75,000" (*id.*, ¶ 22). The general rule is that "[w]hen a plaintiff invokes federal-court jurisdiction, the plaintiff's amount-in-controversy allegation is accepted if made in good faith." *Dart Cherokee Basin Operating Co. v. Owens*, --- U.S. ----, 135 S.Ct. 547, 553, 190 L.Ed.2d 495 (2014); *see also Giovanno v. Fabec*, 804 F.3d 1361, 1365 (11th Cir. 2015) ("A plaintiff satisfies the amount in controversy requirement by claiming a sufficient sum in good faith.") (citation omitted). Here, however, Nationwide does not claim a determinate amount in damages; rather, its allegations concerning amount in controversy seek to assign a monetary value to its indeterminate claims for declaratory relief. For § 1332 jurisdiction to lie in that context, "the party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum." *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003).[2]

---

[2]    *See also SUA Ins. Co. v. Classic Home Builders, LLC*, 751 F. Supp.2d 1245, 1248 (S.D. Ala. 2010) ("This preponderance-of-the-evidence standard applies to declaratory judgment (Continued)

"When a plaintiff seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective." *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1077 (11th Cir. 2000); *see also South Florida Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315-16 (11th Cir. 2014) ("We have held that for amount in controversy purposes, the value of injunctive or declaratory relief is the value of the object of the litigation measured from the plaintiff's perspective.") (citation and internal marks omitted). "Because [Nationwide] seeks declaratory relief, the amount in controversy is the monetary value of the object of the litigation from [its] perspective." *Weiner v. Tootsie Roll Industries, Inc.*, 412 Fed.Appx. 224, 227 (11th Cir. Feb. 2, 2011) (citations and internal quotation marks omitted). Ultimately, then, the Motion to Dismiss turns on whether Nationwide has shown by a preponderance of the evidence that, from its own perspective, the monetary value of the declaratory relief it seeks is in excess of $75,000.

### B. Whether Plaintiff Has Satisfied the Amount-in-Controversy Threshold by a Preponderance of the Evidence.

In an effort to meet its burden of showing that the amount in controversy surpasses the jurisdictional minimum, Nationwide leans heavily on two specific facts. Whether considered individually or collectively, however, these facts do not show by a preponderance of the evidence that the monetary value of the declaratory judgment sought in this case exceeds the sum or value of $75,000, exclusive of interest and costs.

#### 1. The December 2014 Demand Letter.

First, Nationwide maintains that the § 1332 threshold is satisfied because "Defendant's counsel made a settlement demand in the amount of $500,000.00." (Doc. 14, at 2.) Without a doubt, demand letters are relevant and may be considered in evaluating the § 1332 amount in controversy. *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 (11th Cir. 1994) ("[w]hile [a]

---

actions brought in federal court by an insurer. … This makes sense, given that a declaratory judgment plaintiff does not seek damages at all and thus does not seek a determinate amount of damages."); *Spooner Petroleum Co. v. Utsey*, 2015 WL 3658182, *2 (S.D. Ala. June 11, 2015) (similar); *Company Property & Cas. Ins. Co. v. Metal Roofing Systems*, 2013 WL 5770730, *2 (S.D. Fla. Oct. 24, 2013) ("where Plaintiff requests a declaratory judgment, the party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it bases jurisdiction meets the jurisdictional minimum.").

settlement offer, by itself, may not be determinative, it counts for something"). However, it is equally true that the utility of such demands in the jurisdictional analysis varies widely depending on the circumstances. *See, e.g., Jackson v. Select Portfolio Servicing, Inc.*, 651 F. Supp.2d 1279, 1281 (S.D. Ala. 2009) ("Settlement offers commonly reflect puffing and posturing, and such a settlement offer is entitled to little weight in measuring the preponderance of the evidence."); *Montgomery v. Food Giant Supermarkets, Inc.*, 2014 WL 5307890, *2 (S.D. Ala. Oct. 16, 2014) (in evaluating proper jurisdictional weight to give a demand letter, "courts draw distinctions between settlement offers steeped in puffery and posturing at a high level of abstraction, on the one hand, and those yielding particularized information and a reasonable assessment of value, on the other"). Scrutiny of the subject demand letter here readily exposes the insignificance, jurisdictionally speaking, of the $500,000 figure touted by Nationwide.

As an initial matter, Nationwide disregards the critical fact that the demand letter from the Duboses' counsel dated December 22, 2014, was addressed jointly to both Nationwide (Kimberly Dubose's purported uninsured/underinsured motorist coverage insurer) and First Acceptance Insurance Services, Inc. (by all appearances, the liability carrier for Toni DeLacey, Ms. Dubose's friend who was driving the 2007 Nissan Altima when the wreck occurred). The $500,000 settlement demand in the December 22 letter was not directed solely at Nationwide, and did not purport to relate exclusively to Kimberly Dubose's demand for uninsured/ underinsured motorist insurance benefits from Nationwide. Rather, on its face, the settlement demand was framed as a global figure encompassing all of Ms. Dubose's claims and potential claims against both her own carrier (for uninsured/underinsured motorist benefits) and DeLacey's carrier (presumably for liability benefits). (Doc. 14, Exh. A.) Viewed in this light, the $500,000 figure cited by Nationwide says nothing about the magnitude of the Duboses' demands against Nationwide alone, and is of no value in quantifying the insurance benefits or other monetary damages sought by the Duboses from their own insurer, as distinguished from that of the vehicle's driver.[3]

---

[3] First Acceptance Insurance Services, Inc. (the driver's insurer) is not a party to this declaratory judgment action; therefore, any settlement demands that the Duboses might have directed to First Acceptance, rather than Nationwide, are jurisdictionally irrelevant here.

Moreover, Nationwide's jurisdictional argument pertaining to the demand letter inexplicably overlooks another key qualifier in the letter itself. The Duboses' lawyer demanded settlement "in the amount of $500,000 *or all of the available policy limits, whichever is least*." (*Id.* at 1-2 (emphasis added).) Defendants have made a convincing showing, with neither objection nor dissent from Nationwide, that "all of the available policy limits" in the Nationwide policy amounted to, in the aggregate, a maximum of $75,000;[4] therefore, by the plain language of the December 22 letter, the Duboses' demand from Nationwide did not exceed $75,000. For these reasons, it is not accurate to say, as plaintiff does, that the Duboses' counsel demanded $500,000 from Nationwide to settle the instant insurance coverage dispute.

### 2.   *The Coffield Affidavit and Projected Costs of Defense.*

Second, Nationwide posits that the § 1332 amount-in-controversy requirement is satisfied by reference to the Affidavit of Darren Coffield (doc. 14, Exh. B). In that exhibit, Coffield avers that he is a Nationwide claims representative, explains that his duties include retention and supervision of outside counsel to defend Nationwide in claims for uninsured/underinsured motorist benefits, and posits that "the cost of defending such actions … would be, at a minimum, $5,000.00," and potentially considerably more. (*Id.*, at 2.)[5] In reliance on the Coffield Affidavit,

---

[4]   In particular, the Duboses point to Policy language showing that any uninsured/underinsured motorist coverage furnished by Nationwide was confined "to the sum of the limits of the number of described vehicles, but not to exceed three, insured by this policy." (Doc. 8, Exh. A, at ¶ 2(a).) The Duboses further show that the Policy covered four vehicles, each with a limit of $25,000. (Doc. 8, Exh. B.) Given the language in the Policy restricting the stacking of uninsured/underinsured motorist coverage limits to no more than three vehicles, the maximum coverage that would have been available to the Duboses from Nationwide under the Policy (assuming that Nationwide provided such coverage to them at all) would have been $75,000 exactly (*i.e.*, $25,000 coverage limit per vehicle x 3 vehicles). Hence, the maximum amount of the December 22 demand letter directed at Nationwide did not exceed $75,000, because the letter called for the lesser of $500,000 or the available policy limits.

[5]   The Duboses protest that the Coffield Affidavit should not be considered in adjudicating this Motion to Dismiss because, even though a notary public notarized Coffield's signature, she failed to attach a notarial seal. On that basis, the Duboses insist that this Court may not look to the Coffield Affidavit as a self-authenticating document. (Doc. 15, at 5.) To be clear, defendants' argument is not that Coffield did not actually sign the affidavit or that the affidavit is a forgery, but rather that the notary public failed to comply with a technical requirement under Alabama law in notarizing his signature. The trouble is that defendants point to nothing in the Federal Rules of Civil Procedure or any other federal authority that would forbid a court adjudicating a Rule 12(b)(1) motion from considering exhibits that have not been (Continued)

Nationwide maintains that adding the claimed uninsured/underinsured motorist benefits to the defense costs it would incur if the Duboses sued Nationwide for coverage vaults the amount in controversy above the $75,000 threshold.  (Doc. 14, at 4.)

The Court finds this argument unpersuasive.  As noted, the amount in controversy in a declaratory judgment action is properly gauged by the monetary value of the object of the litigation from the plaintiff's perspective.  However, "[t]he general rule is that attorneys' fees do not count towards the amount in controversy unless they are allowed for by statute or contract."  *McKinnon Motors*, 329 F.3d at 808 n.4 (attorney's fees demanded by insured in bad faith claim pursued in separate litigation do not count toward jurisdictional amount in insurer's declaratory judgment action).  Nationwide has cited no statute or contract that would allow consideration of such fees here, and the Court is aware of none.[6]  More fundamentally, the inescapable fact

---

properly authenticated in conformity with technical principles of state law.  To the contrary, federal courts routinely consider unauthenticated documents on motions for summary judgment, for example, when it is apparent (as it is here) that such documents are capable of reduction to admissible, authenticated form.  *See, e.g.,* Rule 56(c)(2), Fed.R.Civ.P. ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."); *Johnson v. Mobile Infirmary Medical Center*, 2015 WL 1538774, *1 (S.D. Ala. Apr. 7, 2015) ("It is well settled that exhibits are properly considered for summary judgment purposes as long as they may be reduced to admissible form at trial.").  Besides, defendants' authentication argument, if accepted, would eliminate from consideration the Duboses' own exhibits in support of their Motion to Dismiss, consisting of unauthenticated pages purportedly lifted from the subject Policy.  The draconian position that defendants urge with respect to the Coffield Affidavit would thus disqualify important exhibits on both sides, all without identifying any federal procedural requirement mandating such a result.  The Court declines to do so, but will consider the exhibits presented without passing on their authenticity or ultimate admissibility at trial in their present form.

[6]   In this regard, Nationwide's circumstances are materially distinguishable from those in *SUA Insurance Co. v. Classic Homebuilders, LLC*, 751 F. Supp.2d 1245 (S.D. Ala. 2010).  In *SUA*, the undersigned quoted binding authority for the proposition that "[t]he pecuniary value of the obligation to defend the separate lawsuit is properly considered in determining the existence of the jurisdictional amount."  *Id.* at 1251 (citation omitted).  But *SUA* was an insurance declaratory judgment action in which the insurer sought to include in the amount in controversy the costs of defending its insured in the underlying lawsuit pursuant to a contractual duty to defend.  Here, by contrast, Nationwide seeks inclusion of its own attorney's fees that it might incur in its own defense should the Duboses file a lawsuit against it for non-payment of uninsured/underinsured motorist benefits.  Unlike the fees at issue in *SUA*, the attorney's fees claimed by Nationwide are not a creature of statute or contract; therefore, *SUA* (Continued)

remains that the Duboses have not brought a bad-faith or breach-of-contract action against Nationwide based on the denial of uninsured/underinsured motorist coverage for the underlying accident.  Thus, Nationwide's evidence of the defense costs it might incur if some hypothetical contingency were to come to pass (*i.e.*, if the Duboses were to sue it) rests on conjecture and speculation, which this Court cannot indulge in a § 1332 jurisdictional analysis.  *See, e.g., Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 753-54 (11th Cir. 2010) (divining the amount in controversy "only through speculation … is impermissible"); *Crocker v. Lifesouth Community Blood Centers, Inc.*, 2016 WL 740296, *4 (S.D. Ala. Feb. 23, 2016) ("the amount in controversy cannot be satisfied by conjecture or speculation").

At any rate, the Coffield Affidavit is inadequate to satisfy Nationwide's burden as to the amount in controversy for another, independent reason.  Even if Nationwide's own litigation expenses in defending itself against a hypothetical suit brought by the Duboses were properly weighed in the amount-in-controversy inquiry, Nationwide's showing of the likelihood of at least $5,000 in defense costs would not suffice.  Here is why:  Defendants' counsel has affirmatively represented to this Court that "Defendants do not claim more than $65,000.00 in potential uninsured/underinsured motorist coverage damages."  (Doc. 15, at 5.)[7]  In conducting amount-in-controversy analyses under § 1332, federal courts afford great deference to these sorts of representations made by counsel as officers of the court, and presume them to be true.  *See, e.g., McKinnon*, 329 F.3d at 808 (where opposing party indicates that it does not seek and will not accept damages in excess of specified amount, "we give great deference to such representations

---

does not bolster Nationwide's jurisdictional position.  And plaintiff cites no other cases that it contends would support inclusion of its own prospective attorney's fees in the amount-in-controversy calculations.

[7]     This representation is backed by the Affidavit of Kimberly Dubose, who avers that she "will never plead and/or claim" from Nationwide "an amount greater than $65,000" in uninsured or underinsured motorist coverage relating to the August 30, 2014 accident.  (K. Dubose Aff. (doc. 15, Exh. A), ¶ 3.)  She further "agree[s] and stipulate[s] to a cap of any and all damages … for a total of $65,000 from Nationwide" in this coverage dispute.  (*Id.*)  And Ms. Dubose clarifies that she "would not accept more than $65,000.00 from Nationwide Property and Casualty Insurance Company for the aforesaid coverage pertaining to the aforesaid motor vehicle accident."  (*Id.*, ¶ 4.)  Ms. Dubose is now over the age of 19 (*id.*, ¶ 1); therefore, no competency / capacity concerns would appear to be implicated by her Affidavit dated February 25, 2016.

and presume them to be true"); *see also Land Clearing Co. v. Navistar, Inc.*, 2012 WL 206171, *4 (S.D. Ala. Jan. 24, 2012) ("Plaintiff's counsel's insistence that his client does not seek, and will not accept, more than $74,000 from defendants looms large in the jurisdictional inquiry and merits considerable deference."); *Wallace v. Kentucky Fried Chicken*, 2008 WL 4531773, *6 n.13 (S.D. Ala. Oct. 9, 2008) (for amount-in-controversy purposes, "courts in the Eleventh Circuit credit representations of counsel that their clients will neither seek nor accept recovery exceeding the jurisdictional amount").

Accordingly, and in the absence of any contrary evidence or argument, the Court credits defense counsel's representations (and Kimberly Dubose's averments) that the insureds do not seek, and will not accept, more than $65,000 in potential damages from Nationwide relating to any uninsured/underinsured motorist benefits due and owing to Ms. Dubose as a result of the August 30, 2014 automobile accident. Combining defendants' stipulated damages cap of $65,000 with the $5,000 in litigation costs that Nationwide has shown it would likely incur in defending against any claims the Duboses might bring would yield a total of $70,000. That figure, in turn, constitutes the maximum value of the monetary object of this declaratory judgment action, viewed from plaintiff's perspective, that Nationwide has shown by a preponderance of the evidence. Obviously, that figure falls short of the $75,000 jurisdictional threshold fixed by 28 U.S.C. § 1332. On that basis, the Court concludes that plaintiff has not met its burden of showing by a preponderance of the evidence that the amount in controversy exceeds the sum or value of $75,000, and that diversity jurisdiction is therefore lacking. Inasmuch as no other viable basis for federal subject matter jurisdiction has been pleaded in the Complaint, this action is properly dismissed on jurisdictional grounds.

### III. Conclusion.

For all of the foregoing reasons, defendants' Rule 12(b) Motion to Dismiss (doc. 8) is **granted**, pursuant to Rule 12(b)(1), Fed.R.Civ.P.  This action is hereby **dismissed without prejudice** for want of subject matter jurisdiction.

DONE and ORDERED this 12th day of April, 2016.

s/ WILLIAM H. STEELE  
CHIEF UNITED STATES DISTRICT JUDGE